UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br>**James Michael Lovey and<br>Julia Danielle Kinsey,**<br><br>Debtors. | **Bankruptcy Case<br>No. 12-40883-JMM** |

**MEMORANDUM OF DECISION**

**Appearances:**

Brent T. Robinson, Rupert, Idaho, Attorney for Debtors.
David W. Newman, Boise, Idaho, Attorney for the United States Trustee.

*Introduction*

Before the Court are two motions filed by the debtors in this case, James Michael Lovey and Julia Danielle Kinsey ("Debtors"). The first is titled "Second Corrected Amended Chapter 11[1] Final Report," Dkt. No. 150, and is, in essence, a motion for entry of an early discharge. The second motion is one seeking to modify Debtors' confirmed chapter 11 plan, Dkt. No. 161, to which the United States Trustee ("UST") has objected, Dkt. No. 165.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION − 1

The Court conducted hearings on January 15, 2019, and then, following the filing of the motion to modify the plan, on March 28, 2019. Dkt. Nos. 158, 174. After the most recent hearing, the motions were deemed under advisement.

The Court has now considered the motions, briefs, and oral argument presented, as well as the applicable law, and issues the following decision. Fed. R. Bankr. P. 7052; 9014.

## *Facts*

This chapter 11 case was filed on June 21, 2012. Dkt. No. 1. On August 14, 2013, Debtors' amended plan was confirmed ("Plan"). Dkt. Nos. 79, 100. Relevant here, the Plan listed U.S. Bank, N.A. ("US Bank") as a Class 5 creditor, and provided:

> U. S. Bank, N. A., has a lien in (1) office supplies valued at $300, (2) equipment valued at $15,000, (3) inventory valued at $5,000 and (3) accounts receivable valued at $8,000.
> That said assets shall be surrendered for those values and the balance of the indebtedness owed to U. S. Bank, N. A. shall become unsecured and be paid in accordance with Class 6.

Dkt. No. 79 at p. 7. US Bank has filed a total of eight proofs of claim in this case, and the confirmed Plan did not distinguish between them. [2]

---

[2] US Bank filed the following proofs of claim:

| Claim No. | Date Filed | Reason | Amount |
|---|---|---|---|
| 4 | 07/05/2012 | Loan | $55.90 |
| 5 | 07/06/2012 | Loan | $142.12 |
| 6 | 07/06/2012 | Loan | $12,575.01 |
| 7 | 07/06/2012 | Loan | $7,915.48 |
| 8 | 07/12/2012 | Loan | $4,113.19 |
| 9 | 07/12/2012 | Loan | $2,404.71 |

MEMORANDUM OF DECISION − 2

The Plan also stated in Class 6 that general unsecured creditors were entitled to the following under the Plan:

> All claims, which includes those who must file a proof of claim, or those that are listed in the Schedules as undisputed, as well as contested claims approved by this Court shall receive $500 per month to be divided amongst the unsecured creditors on a pro rata basis. Unsecured creditors shall receive approximately 23% of their claim. Payments shall be made monthly commencing on the 15th day of August, 2013, and shall be proportionately divided among the claimants. The payments will continue for one hundred twenty-six (126) months.

*Id*.

Debtors made Plan payments and returned the property to US Bank as contemplated in the Plan.  On August 10, 2018, Debtors filed a chapter 11 final report in which they reported that US Bank was paid $6,257.47, as well as 23% of each unsecured creditor's claim.  Dkt. No. 131.  The report indicates that only student loans and mortgage indebtedness remain, which extend beyond the life of the Plan.  *Id*.  That same day, Debtors filed a motion seeking entry of a discharge prior to the conclusion of the 126 months specified in the Plan, on the grounds that they had made all payments except for the student loans and mortgage debts.  Dkt. No. 130.  The UST objected to the motion because it was filed improperly under negative notice when the Code requires a hearing.  Also, relevant to the issue currently before the Court, the UST stated the

---

| 12 | 12/05/2013 (amended) | Loan | $48,665.44 |
| 15 | 09/17/2012 | Loan | $14,773.15 |

MEMORANDUM OF DECISION − 3

amount actually paid to US Bank, and to which US Bank claims the payments were applied, was unclear.  Dkt. No. 137.

Debtors thereafter withdrew the motion for entry of discharge and filed an amended final report which indicated that US Bank's debt was "[p]aid in full by return of property," Dkt. No. 144, as well as a second motion for entry of discharge, Dkt. No. 145.  Both motions were signed on November 27, 2018, but stated that they were intended to be effective as of July 6, 2018.  The UST objected to the motion for entry of discharge for similar reasons as were raised in its prior objection.  Dkt. No. 147.

Thereafter, Debtors filed a second amended chapter 11 final report.  Dkt. No. 149. In that report, Debtors stated again that US Bank was paid in full via a return of property, and that unsecured creditors received a total of $50,024.24.  *Id*.  The report also clarified that "[i]nstead of naming U.S. Bank with the amount of $30,000 and a payment to such, unconnected to any claim of $9,605.60, the amount actually paid was paid to EdFinancial services, a non-dischargeable student loan and the date of the report is changed to July 6, 2018."  Dkt. Nos. 149, 150.  This final report was followed by the amended motion for entry of discharge currently before the Court today.  Dkt. No. 150. Debtors thereafter filed a motion to modify the Plan, apparently after some discussion with the UST.  Dkt. No. 161.

/ / / / /

MEMORANDUM OF DECISION − 4

*Analysis*

A. Motion to Modify Plan

While Debtors' motion to modify their Plan was filed subsequent to the motion for entry of discharge, the Court will consider it first, as it may have bearing on Debtors' motion for entry of discharge. By this motion, Debtors seek to modify their Plan to delete the requirement to make any further payments to unsecured creditors after July 2018, with the exception of EdFinancial Services, because that debt is for a student loan. The basis for the modification sought by Debtors is, as stated above, US Bank had a lien on office supplies, equipment, inventory, and accounts receivable totaling $38,300, which assets were turned over to US Bank as payment for the debts they owed to it. Debtors contend that US Bank accepted that property as payment in full for their debt. Moreover, Debtors assert that:

> subsequent to the Order of Confirmation being entered, an Amended Proof of Claim was entered with respect to this loan but the provisions with respect to such show that they only sold one vehicle and gave no credit for all of the other assets, which in fact were taken by them with respect to this indebtedness. Furthermore, U.S. Bank has not made any claims for the payments to them with respect to this indebtedness even though they had been paid on other claims since the time that the plan was confirmed on August 14, 2013.

Dkt. No. 161 at 2-3.

Based on these assertions by Debtors, the Court assumes they are referring to Proof of Claim No. 12, which is the only US Bank proof of claim to have been amended in this case. The amended proof of claim, filed December 5, 2013, indicates that a

MEMORANDUM OF DECISION − 5

vehicle was sold, netting $2,175 toward the claim. Claims Reg. No. 12-2. The fact that US Bank filed an amended proof of claim following the sale of the vehicle seems at odds with Debtors' assertion that US Bank deemed its claim paid in full when the property was turned over to it. On the other hand, US Bank has not objected to the motion for entry of an early discharge or to the motion to modify the Plan, nor has it responded to Debtors' objection to its proof of claim.[3]

A motion to modify an individual chapter 11 plan is governed by § 1127(e), which provides:

> If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to--
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time period for such payments; or
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

As noted above, through this motion, Debtors seek to eliminate all future payments on unsecured debts under the Plan, and to discharge those debts. Only the payments on the student loan would continue to be paid. Although § 1127(e) is not a cause-based provision, Debtors have nonetheless stated no grounds in support of their

---

[3] Debtors objected to US Bank's proof of claim on March 4, 2019. Dkt. No. 172. The objection seeks to determine that US Bank's debt, evidenced by Claim No. 12, is fully paid via the return of the property. That objection was filed under negative notice, and the time to respond has now passed, although it had not as of the date of the hearing.

MEMORANDUM OF DECISION − 6

position, and it is clear Debtors are proposing the modification as a means to an end—to line the Plan up with the entry of an early discharge.

Deciding a motion to amend a confirmed individual chapter 11 plan is in this Court's discretion. *In re Mattson*, 468 B.R. 361, 367 (9th Cir. BAP 2012).[4] Under § 1127(e), an individual chapter 11 debtor must seek modification to accomplish one of the three goals enumerated above. *In re Sandford,* 498 B.R. 307, 311 (Bankr. D.N.M. 2013) ("[t]he three subsections of § 1127(e) are exclusive; if a proposed modification does not fall within one of the subsections, the modification cannot be allowed."). In this case, Debtors seek to reduce US Bank's claim specifically, as well as payments to the class of unsecured creditors, and thus the first threshold requirement has been met.

Next, the Code requires that §§ 1121 through 1128, as well as the requirements of § 1129, apply to any modification under subsection (e). § 1127(f)(1). Those sections require, *inter alia*, that disclosure under § 1125 and balloting take place. *See In re Hanson,* No. 4:17-BK-15656-SDR, 2018 WL 4674592, at *9 (Bankr. E.D. Tenn. Sept. 26, 2018) (a modified plan is subject to the voting requirements of § 1129(a)(8)); *In re McMahan*, 481 B.R. 901, 920-21 (Bankr. S.D. Tex. 2012) ("Under § 1127(f)(2), an individual debtor's Chapter 11 plan 'as modified, shall become the plan only after there has been disclosure under § 1125 . . . notice and hearing, and such modification is approved.'").

---

[4] *Mattson* is a chapter 13 case, but the modification provisions under chapters 12 and 13 are analogous with § 1127(e). *In re Lemus*, 516 B.R. 333, 337 (Bankr. E.D. Va. 2017).

MEMORANDUM OF DECISION − 7

When Congress passed §1127(c), which provides that the proponent of a modified plan must comply with § 1125, which in turn requires disclosure and balloting, the House Report indicated a possible relaxation of those requirements when it wrote: "Of course, if the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances." H.R. Rep. No. 595, 95th Cong., 1st Sess. 411; *see also* 7 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1127.LH[1][a] (16th ed). In response, there are cases holding that if only one creditor is affected by a proposed modification, then further disclosure under § 1125 is unnecessary. *In re Temple Zion*, 125 B.R. 910, 914 (Bankr. E.D. Penn. 1991) (citing *In re Am. Solar King. Corp.*), 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988); *In re Continental Airlines,* No. 93-252-SLR, 1994 WL 828457, at *6 (D. Del. June 8, 1994). The Ninth Circuit Bankruptcy Appellate Panel is in accord. *Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59, 65 (9th Cir. BAP 1988) ("plan modifications do not require a new disclosure statement and court approval unless the modifications are material.") (citing *In re Am. Solar King*, 90 B.R. at 824 ("A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance.")); *see also In re Intercare Health Sys., Inc.*, No. 2:09-BK-29121-PC, 2013 WL 5979762, at *5 (Bankr. C.D. Cal. Nov. 12, 2013) (the modification of payment terms was not material because a creditor or interest holder who accepted the plan, if it knew of the modification, would not be likely to reconsider its acceptance of the plan); *In re W.C. Smith, Inc.*, No. 89-

MEMORANDUM OF DECISION − 8

11534S, 1991 WL 163726, at *2 (Bankr. E.D. Pa. Aug. 21, 1991) (new disclosures were necessary because "the changes contemplated in the effectuation of the plan are considerable, and could affect the rights of all interested parties. Therefore, we conclude that, here, a new disclosure statement must be prepared and presented to all creditors, who must then be given an opportunity to change their previous votes.") (internal citations omitted).

The Court concludes that disclosure and balloting are required in this instance. The proposed modification would affect the entire class of unsecured creditors as well as US Bank specifically. Debtors' proposed modification would reduce the number of payments to unsecured creditors from 126 to approximately 60, and the total payments to that class from $63,000 to $30,000.[5] As such, the Court finds Debtors' proposed modification to be material, such that it is necessary for Debtors to circulate amended disclosures and solicit votes. The fact that US Bank and all unsecured creditors have been properly served, *see* Dkt. No. 163, and have registered no objection to Debtors' motion on the basis of either substance or procedure, is not dispositive. Were the Court to consider it so, it would obviate the necessity of disclosure and balloting, and run afoul of § 1127(f)(1).

Because the Court concludes Debtors have not complied with the requirements for modification, Debtors' motion to modify is denied.

---

[5] Plan payments were to begin in August 2013, and Debtors' proposed modification is intended to take effect as of July 2018. 126 x $500 = $63,000; 60 x $500 = $30,000.

MEMORANDUM OF DECISION - 9

B. Motion for Entry of Discharge

Debtors move for entry of discharge pursuant to § 1141(d)(5), which provides, in relevant part:

> In a case in which the debtor is an individual ---
> (A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if--
> (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
> (ii) modification of the plan under section 1127 is not practicable; and
> (iii) subparagraph (C) permits the court to grant a discharge[.]

Although Debtors contend in their motion that they have completed all payments due under the Plan, that is not accurate. The Plan obligates Debtors to pay unsecured creditors $500 per month for a period of 126 months beginning August 15, 2013, whether any unsecured portion of US Bank's Claim No. 12 is included in that class or not. Dkt. No. 79 at p. 7. A confirmed plan is binding on all parties and is essentially a contract between debtors and their creditors. *Miller v. United States,* 363 F.3d 999, 1004 (9th Cir. 2004); *In re Yett*, 540 B.R. 445, 449–50 (Bankr. D. Idaho 2015). As such, Debtors are contractually bound to make all 126 monthly payments unless they receive a discharge prior to completion of those payments.

MEMORANDUM OF DECISION − 10

There is scant case law interpreting § 1141(d)(5)(B).  However, giving the text its plain meaning, *see Lamie v. U.S. Trustee,* 540 U.S. 526, 536 (2004), Debtors need only demonstrate that their unsecured creditors have received at least as much as they would have had the debtor's estate been liquidated under a chapter 7 bankruptcy case, and that modification of their chapter 11 Plan is not practicable.[6]

The Court acknowledges the parallels between the early discharge provisions in chapter 11 for individual debtors and those in chapters 12 and 13.  In crafting the requirements for such a discharge in an individual chapter 11 case, however, Congress did not entirely import the existing language from chapters 12 or 13, both of which require a showing that the "debtor's failure to complete [payments under the plan] is due to circumstances for which the debtor should not justly be held accountable." §§ 1228(b)(1), 1328(b)(1).  The absence of a comparable "hardship" provision in § 1141(d)(5)(B) suggests that an early discharge for an individual in a chapter 11 case hinges only on payment of at least liquidation value to unsecured creditors under the plan, and the practicality of a later plan modification.  8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1141.05[2][b] (15th ed.).

---

[6] The final requirement of the § 1141(d)(5)(B), that subparagraph (C) permits the court to grant a discharge, is not in question, as that subparagraph pertains to specific civil and criminal conduct not at issue here.

MEMORANDUM OF DECISION − 11

The Court finds this omission curious, because potentially, individual chapter 11 debtors, upon finding themselves in more difficult circumstances than anticipated, could simply move for early discharge as soon as they have paid sufficient amounts to unsecured creditors to meet the best interest of creditors test, but ignore the number of months that have either elapsed or remain under the chapter 11 plan.  This appears to be exactly what Debtors are attempting in this case.  On the other hand, reading the requirements too strictly could gut the rule.  As one court put it:

> the Court does not believe that Congress intended simply to provide additional discretion to bankruptcy courts to grant an early discharge once the creditors had received at least as much as they would have received in a chapter 7 liquidation case. While under the current circumstances no modification of the Belchers' plan appears warranted, a material change in those circumstances might well make a modification of plan provisions not merely justifiable, but completely necessary. For example, if one of the Debtors were to suffer some disabling injury or illness, or, on a more optimistic note, were to benefit from some great unexpected good turn of fortune prior to completion of plan payments, some modification of the plan, either adverse or favorable to the interests of the unsecured creditors, would appear to be not just possible, but quite likely. Accordingly, the Court concludes that in an individual chapter 11 case plan under which payments from future income are to be made to creditors whose debts will be partially paid, but otherwise will be discharged upon completion of payments under the plan, it is not possible in the absence of some particular factual situation being presented to determine that modification of such a plan pursuant to § 1127(e) could not be "practicable" within the meaning of § 1141(d)(5)(B)(ii).

*In re Belcher*, 410 B.R. 206, 217 (Bankr. W.D. Va. 2009.  If the Court considers whether modification could *ever* be practicable, then few cases would ever qualify.

Regardless, this Court need not struggle with these legal and philosophical issues under the facts presented here.  Initially, the Court acknowledges that Debtors have

MEMORANDUM OF DECISION − 12

demonstrated that unsecured creditors have received at least as much as they would in a chapter 7 liquidation case. Dkt. No. 150-1 Ex. A. To confirm their chapter 11 Plan in the first place, they had to prove this would be the case, *see* § 1129(a)(7)(A)(ii), and Debtors have indicated in their motion that they have paid enough to reach the 23% threshold they promised to pay unsecured creditors upon completion of their Plan payments. That threshold was enough to satisfy the test for confirmation.

The Court's first concern is whether simply reaching the 23% marker is sufficient, when the Plan suggests that "at least" 23% of the total unsecured claims will be paid. Is merely reaching that percentage enough? The Court finds this an easy question to answer, under the facts presented here, as Debtors are obligated under the Plan to pay towards the debt of the unsecured class for 126 months. They established a minimum percentage those creditors would be paid, but the Plan indicated continuing payments for a specified period of time. Simply reaching the minimum percentage of payment does not obviate the duty to make payments for the entire 126 months.

The second issue is related to the first. Debtors must show that modification of the Plan is not practicable. They have made no such showing. While the Plan binds them to pay $500 per month toward unsecured creditors, Debtors have not shown the Court that they are unable to pay a lesser amount in order to reach the full 126 months.

When questioned by the Court on this issue during the hearing, Debtors' counsel merely stated that his clients had given up their business in Idaho and moved to New Jersey, where they now have salaried positions and cannot afford to continue to make

MEMORANDUM OF DECISION − 13

their Plan payments. It is the Debtors' burden to prove that all required conditions are met to qualify for an early discharge. *In re Fisher*, 91 I.B.C.R. 192, 193 (Bankr. D. Idaho 1991). This Court has previously considered a case in which no submissions were made to establish that some sort of modification would not be practicable, and the Court in that case accepted debtor's counsel's representation that his client lacked sufficient income generating ability to meet his obligations under the plan. *In re Milburn*, No. 96-20046, 1999 WL 33490231, at *2 (Bankr. D. Idaho Sept. 16, 1999). However, notably different in that case was the fact that there were no objections to the debtor's motion. Here, the UST has objected, and during the hearing, he specifically cited the fact that there had been no evidence presented that Debtors could not modify the Plan in some way so as to be able to continue to make payments. As such, the Court finds *Milburn* to be distinguishable.

The Court concludes that Debtors have failed to demonstrate that modification of the Plan is not practicable. While Debtors may not be able to afford to pay $500 per month to their unsecured creditors, the Court is not satisfied that they are unable to pay some lesser sum for the full length of the Plan. Accordingly, Debtors' motion for entry of discharge is denied.

### *Conclusion*

Because Debtors have not complied with the requirements for modification of a chapter 11 plan, namely disclosure and balloting, their motion is denied. Additionally, Debtors have not shown that modification of the Plan is

MEMORANDUM OF DECISION − 14

impracticable, and thus their motion for entry of a discharge prior to completing all Plan payments is likewise denied.

    A separate order will be entered.

DATED: April 19, 2019

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 15